# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

———————————————

Mathew Lehrfeld,
      Petitioner


    vs                                Case No. C-1-01-432
                                            (Dlott, J.; Sherman, M.J.)


Jeffrey Wolfe,
          Respondent

———————————————

## REPORT AND RECOMMENDATION
———————————————


      Petitioner, an inmate in state custody at the Noble Correctional Institution in Caldwell, Ohio, brings this action pro se for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition, respondent's return of writ, and petitioner's traverse. (Docs. 1, 3, 8).


### Procedural Background

      On January 22, 1999, the Hamilton County, Ohio grand jury indicted petitioner on two counts of aggravated burglary, as defined in Ohio Rev. Code § 2911.11(A)(1). (Doc. 3, Ex. 1). Petitioner waived his right to a jury trial (*Id.*, Ex. 2; Doc. 5, Trial Transcript, Tr. 6) and in a judgment entry dated May 13, 1999, the court convicted petitioner of one count of burglary and found him not guilty of

aggravated burglary charged in the second count (Doc. 3, Ex. 2). On June 15, 1999, the court sentenced petitioner to three years of community control, ordering petitioner to enter and complete the River City Correctional Center (RCCC) program, apparently for the purpose of receiving drug abuse and mental health treatment. (Doc. 3, Exs. 4, 5).

On August 5, 1999, the Chief Probation Officer of Hamilton County issued a report of probation violation, alleging that petitioner had indicated that he felt like killing the trial judge and the prosecuting witness. (Doc. 3, Ex. 6). At his hearing, several staff members from RCCC testified that petitioner had made such statements. (Doc. 5, Probation Violation Hearings, Tr. 9-31). On September 1, 1999, the Court found petitioner guilty of violating the conditions of his community control and sentenced him to five years of community control, ordering placement in the RCCC program. (Doc. 3, Ex. 7). The Court indicated that petitioner was mentally ill and highly addicted as one of the factors relevant to sentencing. (*Id.*). On September 15, 1999, a community control sanction violation was filed with the trial court, indicating that petitioner had failed to successfully complete the RCCC program, one of the conditions of his community control. (Doc. 3, Ex. 9). On September 28, 1999, petitioner pled no contest to the charge that he had violated his probation, admitting the fact that he did not successfully complete the RCCC program. (Doc. 5, Probation Violation Hearings, Tr. 47). On that same day, the trial court revoked community control and sentenced petitioner to six years of incarceration. (Doc. 3, Ex. 10; Doc. 5, Probation Violation Hearings, Tr. 50).

Petitioner, assisted by new counsel, filed a timely appeal to the Ohio Court of Appeals, First Appellate District from both the trial court's June 15, 1999 judgment entry sentencing petitioner to community control and the September 28, 1999 judgment entry sentencing petitioner to six years in prison. (Doc. 3, Exs. 11, 12). The appeals were consolidated. (Doc. 3, Ex. 13). Petitioner raised the following assignments of error:

1. The trial court erred to the prejudice of defendant-appellant by finding him guilty of burglary when the state of Ohio failed to offer sufficient evidence to sustain a conviction.

2. The trial court erred to the prejudice of defendant appellant by failing to grant his Crim. R. 29 motions for acquittal.

3.  The trial court erred to the prejudice of defendant-appellant as he was denied his right to effective assistance of counsel, secured to him by the Sixth Amendment to the Constitution of the United States.

4.  The trial court erred to the prejudice of defendant-appellant as the trier of fact's verdict was contrary to the manifest weight of the evidence, thereby denying defendant-appellant of Due Process and a fair trial as guaranteed by the Constitutions of the United States and State of Ohio.

(*Id.,* Ex. 14).   On June 28, 2000, the Ohio Court of Appeals overruled the assignments of error and affirmed the judgment of the trial court. (Doc. 3*,* Ex. 16).

With the assistance of the same counsel, petitioner further appealed his conviction and sentence to the Ohio Supreme Court, presenting the following propositions of law:

1.  A trial court errs to the prejudice of a criminal defendant by finding the defendant guilty of burglary as defined in R.C. §2911.12, and overruling the defendant's Crim. R. 29 motions for acquittal when there was no evidence that the defendant acted with force, stealth or deception, and no evidence that the defendant trespassed on the property at issue, and finally that there was no evidence the defendant committed a theft offense.

2.  A criminal defendant is denied the effective assistance of counsel when counsel reveals the defendant's prior drug treatment information to the trial court and recommends that the defendant waive a jury trial.

3.  The trial court's verdict finding defendant guilty of burglary was contrary to the manifest weight of the evidence when the credibility of the state's key witness was seriously lacking.

4.   A trial court errs by sentencing a defendant to more than the minimum sentence for a first time prison term when there was no finding that the minimum sentence would demean the seriousness of the offense or would not protect the public as required by R.C. 2929.14(B).

3

(Doc. 3, Ex. 18).  On July 19, 2000, the Ohio Supreme Court dismissed petitioner's appeal as not involving any substantial constitutional question. (Doc. 3, Ex. 20).

On September 25, 2000, petitioner filed an application for reopening pursuant to Ohio Appellate Rule 26(B) based on the allegedly ineffective assistance of his appellate counsel. (Doc. 3, Ex. 21).  Petitioner asserted as follows:

> Appellant was materially prejudiced by the ineffective assistance of appellate counsel in that appellate counsel failed to raise a sentencing error pursuant to Ohio Revised Code and Ohio General Assembly's Senate Bill 2; and that appellate counsel failed to raise miscellaneous assignment of errors; and that appellate counsel failed to argue the then existing assignment of errors on Appellant behalf fully with applicable authorities and references to the record.

(*Id.* at 3).  Petitioner also listed several "miscellaneous" assignments of error that appellate counsel should have raised. (*Id.* at 8).  On April 9, 2001, the Ohio Court of Appeals denied petitioner's application to reopen his appeal.  (Doc. 3, Ex. 24).

Respondent asserts that petitioner failed to submit a timely appeal to the Ohio Supreme Court.  (Doc. 3 at 6).  Petitioner asserts that he submitted the materials necessary to perfect his appeal to the prison officials for mailing two days before the filing deadline, but the clerk of the Ohio Supreme Court refused to file his documents because they arrived one day late. (Doc. 9 at 6, Exs. A, B).

Petitioner filed the instant petition for a writ of habeas corpus raising the following grounds for relief and supporting facts which are quoted verbatim:

> Ground one: Denial of effective assistance of counsel both on the Trial and Appellate level as secured by the Sixth Amendment of the Constitution of the United States.
>
> > Supporting facts: Counsel performance was deficient for advising Petitioner to waive a jury trial for the reason that he would be acquitted by Trial Court, and for discussing confidential information with Trial Court prior to sentencing.  Trial counsel also failed to object to privileged information, certain evidence and sentencing procedures.

Trial counsel also revealed attorney client information without permission ot [sic] the Trial Court. The validity of the claim of denial of effective assistance of counsel was later found by the Trial Court on the record.

Appellate counsel failed to raise a sentencing error and to argue existing assignments of error with applicable and pertinent case law and statutes. Miscellaneous errors were also not raised in the Appeal by counsel.

. . .

Ground two: Conviction obtained in Bench Trial without an iota of proof, beyond a reasonable doubt, of every fact necessary to constitute the crime that Petitioner was charged with, thereby denying Petitioner of his constitutional right to Due Process and Equal Protection provided for in the Fourteenth (14th) Amendment to the United States Constitution.

Supporting facts: Ohio Statutory law clearly defines the elements necessary for a conviction of burglary. The elements were not even remotely proven or found in the instant case and which the Trial Court later admitted on the record. After the conviction of the Defendant for burglary, the Judge stated in Open Court to the Defendant, "It was <u>really</u> an interesting story, I still do <u>not know</u> what happened in there.", which clearly shows that the Trial Court could not and did not find the essential elements of the crime proven beyond a reasonable doubt. Furthermore, the Trier of Fact subsequently stated on the record, "Whether all the other stuff was true or not, you should not have been there.", totally manifesting a miscarriage of justice in the instant matter.

The State's evidence clearly failed to be sufficient to support a guilty verdict when: a. <u>No</u> force was demonstrated; b. <u>No</u> trespass found; c. <u>No</u> theft committed; d. <u>And</u> the purpose to commit a felony offense, required by

Ohio Law, was clearly not shown during trial.

The Trial Court also specifically found that the Petitioner was the only one who called 911 for "help" and that entry had indeed been granted into the premise, and as such no trespass ever occurred. . . .

Ground three: The Trial Court's verdict finding Petitioner guilty was contrary to the manifest weight of the evidence when the credibility of the States felony witness and operator of the crack house was determined to be reliable over the Petitioner, even after perjuring herself in the courtroom, in finding Petitioner guilty in violation of the Sixth (6th) and Fourteenth (14th) Amendment of the United States Constitution.

Supporting facts: A court reviewing questions of the manifest weight of the evidence may consider and evaluate all the evidence produced at Trial. This case contains ludicrous allegations that this Trial Court termed 'bizarre' late into the proceedings. The entire proceedings manifested a mockery of justice and basic constitutional rights infringed upon.

The credibility of the prosecuting witness, a convicted felon who was arrested after testifying for outstanding warrants, over a first-time offender was an abuse of discretion by this judge at this bench trial. The Due Process Clause requires the government to prove beyond a reasonable doubt every element of the crime with which a Defendant is charged. Although several stories were fully concocted by the State's witness in which the State had total knowledge, all of these stories were found not credible by the Trial Court. Nonetheless with no evidence a 'guilty plea' was found.

Ground four: A sentence imposed by a Trial Court at a subsequent violation hearing based on privileged information was in violation of free speech and due process protected by the First (1st), Sixth (6th),

Fourteenth (14th) Amendments of the United States Constitution.

Supporting facts: A sentence imposed contrary to established State law is in violation of the Due Process Clause. The Trial Court imposed a sentence which is in violation of the Eighth Amendment to the United States Constitution concerning cruel and unusual punishment.

When a Defendant is sanctioned into drug and alcohol treatment as part of a sentence imposed by the Trial Court, and then later the counseling from that treatment is utilized by the Trial Court to impose a six (6) year sentence on the sole basis of 'privileged communications' while in treatment is a serious violation of basic constitutional rights.

(Doc. 1, Attachments, pages A-1 - A-5).

In his return of writ, respondent argues that petitioner has waived his ineffective assistance of appellate counsel claims and some of his ineffective assistance of trial counsel claims asserted in his first ground for relief and his sentencing claim asserted in his fourth ground for relief due to procedural defaults in the state courts, that petitioner's remaining ineffective assistance of trial counsel claims in his first ground for relief and his sufficiency of evidence claim in his second ground for relief lack merit, and that petitioner's manifest weight of the evidence claim asserted in ground two and his state law sentencing claim asserted in ground four are not cognizable. (Doc. 3).

## OPINION

### I. Three of Petitioner's ineffective assistance of trial counsel claims, asserted in his first ground for relief, are waived due to a procedural default

As his first ground for relief, petitioner asserts that his trial counsel provided constitutionally ineffective assistance for these reasons: 1. counsel advised him to waive a jury trial; 2. counsel discussed confidential information with the trial judge pertaining to petitioner's previous drug abuse treatments before sentencing; 3. counsel failed to object to the court's reliance on allegedly privileged information disclosed by petitioner during his court ordered drug addiction treatment; 4. counsel failed to object to the sentencing procedures; and 5. counsel failed to object to the introduction of evidence.

As a preliminary matter, this court must examine whether petitioner has waived any of these claims for relief due to a procedural default in the state courts. In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must first fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c)*; see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

If petitioner fails to fairly present his claims through to the state's highest court or commits some other procedural default relied on to preclude review of the merits of petitioner's claims by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, the petition is subject to dismissal with prejudice on the ground that petitioner has waived his claims for habeas corpus relief. *See O'Sullivan,* 526 U.S. at 847-848; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989). If, because of a procedural default, petitioner has not had his claims considered by the state's highest court and he can no longer present his claims to the state courts, he has waived the claims for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

A "fundamental miscarriage of justice" occurs only in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995). To be credible, such a claim "requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not

presented at trial." *Schlup,* 513 U.S. at 324. In order to obtain habeas review of the merits of a procedurally-defaulted claim under the "actual innocence" exception, the otherwise-barred petitioner "must show it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" in light of all the evidence, "including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Id.* at 327-28.

In this case, petitioner committed a procedural default with respect to the ineffective assistance of trial counsel claims based on counsel's failure to object to the court's reliance on privileged information revealed by petitioner during his treatments for drug addiction and counsel's failure to object to the sentencing procedures because petitioner failed to raise these claims as part of his direct appeal. Although he raised other claims of ineffective assistance of trial counsel in his direct appeal, the underlying grounds were different than these. *Cf. Duncan v. Henry,* 513 U.S. 364, 365-66 (1995); *Pillett v. Foltz,* 824 F.2d 494, 496 (6th Cir. 1987).

Ineffective assistance of appellate counsel may constitute cause for a procedural default. *Murray,* 477 U.S. at 488. Petitioner has not, however, alleged as cause that his appellate counsel was ineffective for failing to include these claims in his briefs. Petitioner raised ineffective assistance of appellate counsel claims on other grounds in his application for reopening, but he did not assert in the state court that appellate counsel was deficient on the ground that he omitted claims on appeal that trial counsel failed to object to the court's reliance on information obtained during treatment and trial counsel failed to object to the sentencing procedures. Assuming, *arguendo*, that in the instant proceedings, petitioner had raised ineffective assistance of appellate counsel as cause for petitioner's procedural default of the claims that trial counsel failed to object to the court's reliance on privileged information disclosed during drug treatment and failed to object to the sentencing procedures, that claim itself would have been procedurally defaulted and therefore could not be considered as cause for petitioner's procedural default of failing to raise these ineffective assistance of trial counsel claims in his state appeal of right. *See Edwards v. Carpenter,* 529 U.S. 446, 452 (2000).

Petitioner committed yet another procedural default with respect to his claim that trail counsel was ineffective for failing to object to the introduction of evidence. In his brief to the Ohio Court of Appeals petitioner did allege that trial counsel was ineffective for failing to object to the introduction of the butcher knife which petitioner allegedly used to assault the victim. However, petitioner abandoned this claim by failing to raise

it in the Ohio Supreme Court.  As a result, petitioner did not provide the highest state court in Ohio with an opportunity to correct any alleged constitutional errors. *See Leroy,* 757 F.2d at 99; *see also Hughes v. Idaho State Bd. of Corrections,* 800 F.2d 905, 907-08 (9th Cir. 1986).  Since petitioner does not have a constitutional right to the effective assistance of appellate counsel in his discretionary appeal to the Ohio Supreme Court, any potential claim of ineffective assistance of appellate counsel as cause would not be viable. *See Coleman,* 501 U.S. at 751-753, 755-757; *Marshall v. Trippett,* 27 Fed.Appx. 257, 260, 2001 WL 1298940, at **2-3 (6th Cir. Aug. 7, 2001), *cert. denied,* 537 U.S. 860 (2002); *Killebrew v. Bernhardt,* 72 F.3d 129 (table), No. 94–6567, 1995 WL 712761, at **2 (6th Cir. Dec. 1, 1995) (unpublished); *Barkley v. Konteh,* 240 F.Supp.2d 708, 714 (N.D. Ohio 2002).

As cause for his defaults, petitioner argues that he is actually innocent of the crime.  (Doc. 8 at 8-9).  As the Ohio Court of Appeals found, there was ample evidence on the record supplied by the victim, Mrs. Robinson, that when asked to leave, petitioner remained in her apartment by the use of force and assaulted the victim. (Doc. 3, Ex. 16 at 2; Tr. 21-30, 39, 128). Petitioner has not adduced or proffered any new evidence otherwise.  Petitioner has therefore not established that a miscarriage of justice will result from the failure of this Court to consider these particular ineffective assistance of counsel claims because petitioner is innocent of the crimes of which he was convicted.

Accordingly, for purposes of federal habeas corpus review, petitioner has waived his claims that trial counsel was ineffective for failing to object to the court's reliance on privileged information and the sentencing procedures and for failing to object to the introduction of evidence, asserted in petitioner's first ground for relief in the petition.

## II. Petitioner's remaining claims of ineffective assistance of trial counsel asserted in ground one of the petition do not entitle petitioner to habeas corpus relief.

Petitioner presented in his direct appeal his claims that trial counsel was constitutionally ineffective on the ground that he advised him to waive a jury trial and discussed confidential information pertaining to prior drug abuse treatments with the trial judge before sentencing. Accordingly, this Court may consider the merits of these claims.

To demonstrate that counsel's performance was constitutionally ineffective, petitioner must show: (1) his counsel made such serious errors that he was not

functioning as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced the defense by undermining the reliability of the result. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner made an insufficient showing on either ground. *See id.* at 697.

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *See id.* at 688. Judicial scrutiny of counsel's performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time of the conduct. *Id.* at 689. In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See id.*

In order to satisfy the second "prejudice" prong of the *Strickland* test, petitioner must show that a "reasonable probability" exists that, but for his counsel's errors, the result of the criminal proceedings would have been different. *See id.* at 694. A showing by petitioner that the alleged errors had "some conceivable" effect on the outcome of the proceeding is insufficient to meet this standard. *See id.* at 693. However, by the same token, petitioner need not demonstrate that his counsel's conduct "more likely than not" altered the outcome of the proceeding to establish prejudice. *See id.* Petitioner has met his burden if he shows that the decision reached would "reasonably likely have been different absent the errors." *See id.* at 695.

Under the standard established by the Antiterrorism and Effective Death Penalty Act (AEDPA), codified principally at 28 U.S.C. § 2254 (d), petitioner is not entitled to federal habeas corpus relief, unless the state court's adjudication of his claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998). A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to

11

that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942.

An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.). Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942. The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

When a state court fails to address the constitutional issues raised, the federal court conducts a de novo review, instead of applying the AEDPA standard of review. *Maples v. Stegall,* 340 F.3d 433, 436-437 (6th Cir. 2003) (finding that in *Wiggins v. Smith,* 123 S.Ct. 2527 (2003), Supreme Court reviewed portion of claim not analyzed by state court de novo, without deferring to the state court or applying AEDPA's standard of reasonableness); *Davis v. Secretary for the Dep't of Corrections,* 341 F.3d 1310, 1312 (11th Cir. 2003). *But cf. Wynne v. Renico*, No. 01-10247-BC, 2003 WL 22054238, at *12 (E.D. Mich. Sept. 2, 2003) (district court applied more stringent AEDPA standard where the state court had not directly addressed the constitutional claims, acknowledging that *Maples* and *Wiggins* call for a de novo review and not the more deferential AEDPA review).

The Ohio Court of Appeals found "no deficiency in counsel's performance." (Doc. 3, Ex. 16 at 3). The Court concluded that "[c]ounsel's representations relating to the advantages of a bench trial . . . may well have been tactical." (*Id.*).

12

At his first probation violation hearing, petitioner told the court that counsel advised him that he thought that the court would acquit petitioner if petitioner agreed to a bench trial. (Doc. 5, Probation Violation Hearings, Tr. 34). There was no indication on the record that counsel had promised or guaranteed that an acquittal would be the result. Counsel's advice to petitioner to waive a jury trial and put himself into the hands of the Court was likely based on the fact that petitioner's situation was not a very sympathetic one. By his own admission, he was in the victim's house to purchase crack cocaine and the police saw him wielding a knife at the door of the victim's apartment when they responded to a 911 call. (Doc. 5, Trial Transcript, Tr. 66, 78, 95). Accordingly, counsel's advise to waive a jury trial does not constitute deficient performance.

While the trial judge did appear to know that petitioner had been in drug treatment programs previously (Doc. 5, Trial Transcript, Tr. 128; *see* Doc. 3, Ex. 14 at 9), there is no evidence as to how he acquired that information. Petitioner has not demonstrated that trial counsel revealed that information to the trial court. Accordingly, petitioner has not demonstrated that there is any factual basis for his claim that trial counsel provided confidential information to the Court. Moreover, petitioner has also not demonstrated how such information would have prejudiced his case even if trial counsel had shared it with the judge prior to sentencing. Evidence of petitioner's past drug treatment programs likely would have surfaced in the presentence investigation. In any event, this revelation did not actually prejudice petitioner because the court placed him on probation in a drug treatment program at RCCC, giving petitioner another chance at rehabilitation despite his previous unsuccessful attempts.

The determination of the Ohio Court of Appeals rejecting petitioner's claims of ineffective assistance of counsel with respect to counsel's advice to waive a jury trial and counsel's alleged disclosure of confidential information to the trial judge pertaining to petitioner's prior treatments for drug addiction was neither contrary to nor involved an unreasonable application of the Supreme Court's standard in *Strickland*, and was not unreasonable in light of the record evidence. Therefore, petitioner is not entitled to habeas corpus relief with respect to these ineffective assistance of trial counsel claims, asserted in ground one of the petition.

### III. Petitioner is not entitled to habeas corpus relief with respect to his ineffective assistance of appellate counsel claims, alleged in ground one of the petition.

Respondent asserts that petitioner has waived his ineffective assistance of appellate counsel claims because he failed to appeal the Ohio Court of Appeals decision denying his application to reopen his appeal to the Ohio Supreme Court. As cause for his default, petitioner asserts that he presented the materials related to perfecting his appeal to the prison mailroom two days before they were due to be filed (May 22, 2001), but they were received by the Ohio Supreme Court one day late (May 25, 2001). (Doc. 8 at 6, Exs. A - D). Respondent does not take issue with the dates petitioner specifies.

To establish cause, petitioner must show that "some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Carrier,* 477 U.S. at 488. Reliance on prison officials over whom a prisoner proceeding pro se has no control for mailing legal documents is such an "external factor." *See Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir. 2003) (citing *Mohn v. Bock,* 208 F.Supp.2d 796 (E.D. Mich. 2002)); (E.D. Mich. 2001). *But see Luby v. Brady,* No. CIV. A. 95-26-SLR, 1996 WL 328589, at *3 (D. Del. May 16, 1996). A petitioner represented by counsel has other options available, such as hand delivery, and the ability to monitor when his documents were received by the court. *Robertson v. Abramajtys,* 144 F. Supp.2d 829, 838-839 (E.D. Mich. 2001) (citing *Houston v. Lack,* 487 U.S. 266, 271 (1988)). A pro se petitioner does not have these options and is forced to rely on the prison personnel to mail his materials. *Id.* Since petitioner who was proceeding pro se presented his appellate documents to the prison authorities for mailing before the filing deadline and his documents were not timely received by the state appellate court, he has established cause to excuse his procedural default based on a late filing. *See Maples,* 2003 WL 21960685, at *5; *Mohn,* 208 F.Supp.2d at 802; *Robertson,* 144 F. Supp.2d at 840.

To excuse a procedural default, petitioner has the burden of demonstrating actual prejudice as a result of the alleged constitutional violation, as opposed to prejudice ensuing from the state procedural default. *Maupin v. Smith,* 785 F.2d 136, 139 (6th Cir. 1986) (citing *United States v. Frady,* 456 U.S. 152, 168, 170 (1982). "[I]n analyzing a petitioner's contention of prejudice, the court should assume that the petitioner has stated a meritorious constitutional claim." *Maupin v. Smith,* 785 F.2d at 139. Since a claim of ineffective assistance of appellate counsel includes a prejudice requirement, any assumption that the claim is meritorious would necessitate a finding of actual prejudice. *Moore v. Carlton,* 74 F.3d 689, 692 (6th Cir.), *cert. denied,* 516 U.S. 1183 (1996); *cf. Phillips v. Mills,* No. 98-5061, 1999 WL 685925, at **4 (6th Cir. Aug. 25, 1999).

Because petitioner has established cause and prejudice, this Court may now consider the merits of his ineffective assistance of appellate counsel claims. Tactical

14

choices regarding issues raised on appeal are properly left to the sound professional judgment of counsel. *United States v. Perry,* 908 F.2d 56, 59 (6th Cir.), *cert. denied,* 489 U.S. 1002 (1990). Counsel is not required to raise every nonfrivolous issue on appeal. *See Jones v. Barnes,* 463 U.S. 745, 750-54 (1983). Indeed, the process of "winnowing out" weaker claims and focusing on those arguments more likely to prevail on appeal is considered "the hallmark of effective appellate advocacy" as opposed to evidence of incompetency. *See Smith v. Murray,* 477 U.S. 527, 536 (1986) (citing *Jones*, 463 U.S. at 751-52).

Petitioner asserts that his appellate counsel was deficient in failing to raise a sentencing error. Ohio Rev. Code § 2929.14(B) requires that the trial court impose a minimum sentence with respect to an offender who has not previously served a prison term unless the court finds on the record that "the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime." Petitioner argues that in this case the trial court imposed a sentence greater than the minimum but failed to make the requisite findings on the record. Petitioner contends that counsel was constitutionally ineffective for failing to raise this issue on appeal.

The Ohio Court of Appeals concluded that "[t]his argument is completely without merit, because the record reveals that the trial court made all the requisite findings to support its sentence, noting in part that appellant had refused drug treatment and had threatened to kill treatment-center staff and court personnel, including the prosecuting witness and judge." (Doc. 3, Ex. 24). Although the Ohio Supreme Court has held that the trial court must specify on the record either or both of the statutory reasons to support a sentence greater than the minimum when a felon has not previously served a sentence, *State v. Jones,* 754 N.E.2d 1252, 1260 (Ohio 2001); *State v. Edmonson,* 715 N.E.2d 131, 132, 135 (Ohio 1999), some appellate courts have held that language used by the trial court "which conceptually equate with the statutory language is sufficient," *State v. Blair,* No. 2003-CA-8, 2003 WL 22025924 at *4 (Ohio Ct. App. Aug. 29, 2003) and cases cited therein; *State v. Thatcher,* No. 01AP-569, 2001 WL 1653491, at *2 (Ohio Ct. App. Dec. 27, 2001).

In this case, the record reveals that petitioner had no prior convictions. (Doc. 5, Tr. 131). The trial court made the following findings to support the prison sentence imposed when petitioner violated probation a second time:

We have to make sentencing findings. Victim suffered serious

15

physical and emotional harm. Psychological harm. The defendant threatened to kill PW, RCCI staff and the court. Refuses RCCI treatment. It's a second probation violation. He is addicted to crack. This is the second treatment program.

Defendant has a mentally ill diagnosis. He is belligerent, suicidal. He was terminated from RCCI for threatening to injure staff members.

(Doc. 5, Probation Violation Hearings, Tr. 50). In concluding that these findings were sufficient under the state sentencing law, the Ohio Court of Appeals apparently infers that the trial court determined that the minimum sentence would not adequately protect the public from future crime because petitioner had threatened to kill others and was refusing treatment for his drug addiction.

On habeas corpus review, the federal court is generally bound by a state court's interpretation and application of state law. *Johnson v. Coyle*, 200 F.3d 987, 993 (6th Cir. 2000); *Warner v. Zent*, 997 F.2d 116, 133 (6th Cir. 1993), *cert. denied*, 510 U.S. 1073 (1994). This is the case even when the state intermediate court, rather than the state's highest court, decided the issue. *Ponnapula v. Spitzer,* 297 F.3d 172, 183 (2nd Cir. 2002) (citing *Estelle v. McGuire*, 502 U.S. 62, 66, 67-68 (1991)). While it appears to this Court that the Ohio Supreme Court would require findings which more explicitly and specifically state the statutory criteria to justify imposition of more than the minimum sentence, *see Jones,* 754 N.E.2d at 1260; *Edmonson,* 715 N.E.2d at 132, 135, this court must defer to the intermediate appellate court's application of the state's sentencing law in this case. Since the Ohio Court of Appeals found that the sentencing findings in this case were sufficient under state law, petitioner cannot demonstrate that a reasonable probability exists that the outcome of the proceedings would have been different if counsel had raised this sentencing error on appeal. In the absence of prejudice, petitioner fails to demonstrate that his counsel was constitutionally ineffective for failing to raise the alleged sentencing error.

The determination of the Ohio Court of Appeals rejecting petitioner's claim of ineffective assistance of appellate counsel with respect to counsel's failure to raise a sentencing issue was neither contrary to nor involved an unreasonable application of the Supreme Court's standard in *Strickland*, and was not unreasonable in light of the record evidence.

As another instance of attorney error on appeal, petitioner argues that his counsel

16

failed to cite supporting caselaw and statutes to support his arguments.   A review of petitioner's appellate brief indicates that counsel did in fact provide the Ohio Court of Appeals with supporting authority for his claims.  (Doc. 3, Ex. 14).  Petitioner fails to indicate what authorities counsel omitted and why they are important to his appeal. Accordingly, petitioner has not demonstrated that his counsel performed deficiently in failing to properly support his appellate brief, and petitioner is therefore not entitled to habeas corpus relief with respect to this claim.[1]

Petitioner also contends that his appellate counsel failed to raise several claims on direct appeal which he refers to in his petition and in his application for reopening as "miscellaneous" errors.  The Ohio Court of Appeals addressed these claims, as follows:

> Appellant also raises a series of "miscellaneous assignments of error", many of which were raised on direct appeal, none of which provide any specific basis for the claim or state the manner in which alleged deficiencies affected the outcome of the appeal as required by App.R. 26(B)(2)(d), and none of which show any deficient performance by appellate counsel or an possibility of prejudice to appellant from counsel's failure to raise the alleged issues.  *See* App. R.26(B)(5); *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052.

(Doc. 3, Ex. 24).

Petitioner listed the following "miscellaneous" assignments of error that appellate counsel should have raised which are quoted verbatim:

> 1. The Trial Court erred in entering a judgement [sic] of conviction when there was insufficient evidence of all the essential elements of burglary.
>
> 2. Counsel failed to file a motion to suppress concerning a critical matter, which could have been granted, constituted ineffective assistance.

---

[1]Since the Ohio Court of Appeals failed to address this claim in the entry denying petitioner's application for reopening, this court does not apply the AEDPA's reasonableness standard of review. *Maples v. Stegall*, 340 F.3d at 436-437 (citing *Wiggins v. Smith,* 123 S.Ct. 2527 (2003)). An application of the AEDPA standard to this claim would have similarly resulted in a denial of habeas corpus relief.

3.   Counsel provided ineffective assistance by failing to request an instruction on a lesser included offense of trespassing and by allowing the Trial Court to be made aware of previous drug problems and rehabilitation efforts of Appellant prior to verdict.

4.   The broad principles of due process and fair play were unconscionably infringed upon the Trial Court when Appellant was ordered into drug treatment and counseling that required him to discuss and admit thoughts and when such admissions were made in the course of therapy to subsequently revoke his Community Control on basis of admission and imposing prison sentence and clearly an abuse of discretion.

5.   The Trial Court erred in entering a judgement [sic] of conviction when the evidence was not sufficient to support the verdict and the conviction was manifestly against the weight of evidence.

6.   Appellant was denied a fair trial due to the prejudicial effects occurring at trial.

7.   Counsel failed to include an assignment of error of police (acting in behalf of the state) and prosecutorial misconduct which included mischaracterization of evidence and falsification of reports and abuse.

8.   The Trial Court committed a reversible error, by [sic] on an admitted perjurer's testimony and without any credible testimony to find the defendant guilty beyond a reasonable doubt.

9.   The Trial Court committed a miscarriage of justice by finding the defendant guilty because the state failed to prove beyond a reasonable doubt that trespass was committed and that the defendant acted with purpose.

(Doc. 3, Ex. 21 at 8).   Assignments of error one, five, eight and nine which pertained to the sufficiency of evidence supporting the conviction were actually raised by petitioner's appellate counsel.   (Doc. 3, Ex. 14 at 4, 9). In assignment of error two, petitioner fails to specify what evidence trial counsel should have attempted to suppress, and accordingly fails to provide any factual basis for his claim.   Similarly, petitioner fails to provide any details concerning his claim of police or prosecutorial misconduct in

18

assignment of error seven and denial of a fair trial in assignment of error six.  Since petitioner was tried before a judge, rather than a jury, his claim that trial counsel should have requested an instructions on a lesser included offense, trespass, is inappropriate. Petitioner's claim that trial counsel was deficient for informing the court about his past, unsuccessful drug treatments is speculative because he does not have any evidence that counsel was the source of the information and moreover, petitioner has not demonstrated that such a revelation prejudiced his case. *See* Section II, *supra.*

Petitioner's claim, asserted as his fourth assignment of error, that the trial court improperly revoked his community control on the basis of admissions he made during therapy that he desired to kill the judge or the victim is factually inaccurate.  After his first probation violation hearing, petitioner's community control was extended to five years on the  basis of testimony by RCCC employees that petitioner had made such threats.  (Doc. 3, Ex. 7).  Petitioner's second probation violation which resulted in a sentence of incarceration was based on petitioner's failure to successfully complete the RCCC drug rehabilitation program. (Doc. 3, Ex. 9).  Petitioner pled no contest to the charge that he had violated his probation, admitting that he did not successfully complete the RCCC program as required by his probation.  (Doc. 5, Probation Violation Hearings, Tr. 47).

To the extent that petitioner is also claiming that the trial judge should not have considered his threatening statements in sentencing him, petitioner has failed to establish that such statements were privileged.  Petitioner apparently stated during an Alcoholics Anonymous meeting at RCCI that while in the justice center he wanted to harm the judge and prosecuting witness. (*Id.*, Tr. 13).   An employee of RCCC overheard the statement. (*Id.*).  Petitioner informed his case manager of these thoughts, as well. (*Id.*, Tr. 9).  He reiterated this statement to an RCCC employee who transported him to the hospital and further indicated that he had called New York to order weapons, apparently to carry out his threats,  but "put it on hold." (*Id.,* Tr. 20-21).  Even if the statements were privileged communications between a counselor and client, they arguably would be exempt from the privilege because they indicate "clear and present danger" to other persons.  *See* Ohio Rev. Code § 2317.02 (G)(1)(a).  Accordingly, petitioner has not demonstrated that appellate counsel performed incompetently or prejudiced the appeal in failing to raise a claim concerning the trial court's reliance on threats petitioner made during his treatment.

The determination of the Ohio Court of Appeals rejecting petitioner's claims of ineffective assistance of appellate counsel based on counsel's failure to raise

"miscellaneous" errors was neither contrary to nor involved an unreasonable application of the Supreme Court's standard in *Strickland*, and was not unreasonable in light of the record evidence. Therefore, petitioner is not entitled to habeas corpus relief with respect to these ineffective assistance of appellate counsel claims, asserted in ground one of the petition.

## IV. Petitioner is not entitled to habeas corpus relief with respect to his claim that there was insufficient evidence to support the burglary conviction, asserted as his second ground for relief.

In his second ground for relief, petitioner asserts that there was insufficient evidence to support a conviction for burglary.

The Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense. *In Re Winship,* 397 U.S. 358, 363-64 (1970). When petitioner raises an insufficiency of evidence claim in a petition for a writ of habeas corpus, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original). Under this standard, a conviction may rest on either sufficient direct evidence or sufficient circumstantial evidence of guilt. *See Tiley v. McMackin,* 989 F.2d 222, 225 (6th Cir. 1993); *Spalla v. Foltz,* 788 F.2d 400, 402 (6th Cir.), *cert. denied,* 479 U.S. 935 (1986); *see also Scott v. Elo*, 302 F.3d 598, 602-603 (6th Cir. 2002), *cert. denied,* 123 S.Ct. 1272 (2003). Moreover, this standard does not require the State to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Jackson,* 443 U.S. at 326. Rather, under this standard, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir.), *cert. denied,* 464 U.S. 951, 962 (1983). It is the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *Jackson,* 443 U.S. at 319. Consequently, the reviewing court is not permitted to make its own subjective determination of guilt or innocence or otherwise substitute its opinion for that of the trier of fact which convicted the petitioner. *Id.* at 318-19 & n.13; *see also York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (per curiam), *cert. denied,* 490 U.S. 1049 (1989).

The Ohio Court of Appeals addressed petitioner's sufficiency of evidence claims,

as follows:

> At the trial that resulted in the original conviction, the court found "that [Lehrfeld] was given entrance into the building but [Lehrfeld] engaged in a theft offense that caused - beyond a reasonable doubt that caused him to be guilty of F-2 burglary." While we find that the record supports the trial court's finding that Lehrfeld was initially given consent to enter the victim's apartment, it does not support a finding of theft. It is well established, however, that the trial court may be right for the wrong reasons. Viewing the record in light most favorable to the prosecution, we conclude that the record contains sufficient evidence for a finding of guilt. The victim's testimony was that Lehrfeld used force to remain in her apartment without permission and that Lehrfeld had the purpose of committing an assault against the victim. Because there was sufficient evidence adduced at trial to support a finding of guilt, we overrule Lehrfeld's first and second assignments of error.

(Doc. 3, Ex. 16 at 2).

Section 2911.12 of the Ohio Rev. Code defines the burglary offense, in pertinent part, as follows:

> (A) No person, by force, stealth, or deception, shall do any of the following:

> (1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense . . . .

Section 2911.21 of the Ohio Rev. Code defines trespass, as follows:

> (A) No person, without privilege to do so, shall do any of the following:

> (1) Knowingly enter or remain on the land or premises of another.

21

Petitioner and the prosecuting witness, Mrs. Robinson told very different stories at trial as to what occurred on January 18, 1999 at Mrs. Robinson's home. Mrs. Robinson testified that when she returned home in the morning, she found petitioner coming out of her bathroom yielding a knife. (Doc. 5, Trial Transcript, Tr. 13). Mrs. Robinson denied allowing petitioner into her house. (*Id.*, Tr. 36). When she reached for the phone to call 911, he grabbed it from her. (*Id.*, Tr. 21). Petitioner came at her with the knife and she, her sister and others present threw skillets and vases at him and used a stun gun to try to stop him. (*Id.*, Tr. 24, 39, 50). When the police arrived they found Mrs. Robinson outside crying with cuts on her arms and legs. (*Id.*, Tr. 63, 75). They found petitioner kneeling with a knife in his hand, shouting "shoot me." (*Id.,* Tr. 66, 76). The police did not recover a knife at the scene. (*Id.*, Tr. 71). Instead, Mrs. Robinson later found a knife and provided it to the police. (*Id.*, Tr. 30, 71, 76).

Petitioner testified that he had purchased crack cocaine from Mrs. Robinson on several occasions. (*Id.*, Tr. 95). On January 18, 1999, he was using cocaine that he purchased from her in her house. (*Id.*, Tr. 96). He leant Mrs. Robinson the car he was driving but she refused to return the keys when asked and she and others present started hitting and kicking him. (*Id.*, Tr. 99-102). He attempted to call 911. (*Id.*, Tr. 99, 103, 104). He denied using a knife, and claimed to have only a cordless phone in his hands when police approached him. (*Id.*, Tr. 104-105). He admitted that he was on his knees, saying "just shoot me," when the police arrived. (*Id.,* Tr. 105). He explained that he did so because he was ashamed to be discovered in a crack house. (*Id.*, Tr. 105). Petitioner had severe bruises on his lower back, thighs and buttocks, a large lump on his head and scratches on his neck and shoulders. (*Id.*, Tr. 86-88).

While the judge acknowledged that this was a confusing case, because the witnesses did have diverse accounts (*id.*, Tr.127), the trial judge appeared to believe parts of each witness's testimony. He believed that petitioner was there to purchase cocaine, as petitioner had testified, but remained there after he was no longer welcome by wielding a knife and ultimately attacking Mrs. Robinson, as Mrs. Robinson testified. (Doc. 5, Probation Violation Hearings, Tr. 33-34, 43). The judge also inferred that the underlying trigger to this entire incident was that petitioner was trying to steal cocaine from Mrs. Robinson (*Id.*, Tr. 43; Trial Transcript, Tr. 128), although there was no direct evidence of this at trial.

When viewing the evidence in the light most favorable to the prosecution, the evidence supports a finding that petitioner remained in Mrs. Robinson's house without her permission by force, specifically, by wielding a knife, and remained with the intent

to assault her and in fact, did assault her.  Accordingly, a rational trier of fact could have found that petitioner was guilty of the burglary beyond a reasonable doubt.  The decision of the Ohio Court of Appeals affirming the judgment of the trial court was neither contrary to nor involved an unreasonable application of the Supreme Court's standard in *Jackson*, and was not unreasonable in light of the record evidence.

Petitioner is therefore not entitled to habeas corpus relief with respect to his second ground for relief.

### V.  Petitioner is not entitled to habeas corpus relief with respect to his claim that his conviction is against the manifest weight of the evidence asserted in ground three of the petition.

In his third claim for relief, petitioner asserts that his burglary conviction was against the manifest weight of the evidence.

The Due Process Clause of the Constitution only forbids convictions based on "evidence insufficient to persuade a rational factfinder of guilt beyond a reasonable doubt." *Tibbs v. Florida,* 457 U.S. 31, 45 (1982).  As both the United States and Ohio Supreme Courts have recognized, the standard employed when reviewing a claim that a guilty verdict was against the manifest weight of the evidence is both quantitatively and qualitatively different from the standard used when considering a constitutional due process claim based upon the sufficiency of evidence.   *See id.* at 44-45*; State v. Thompkins,* 678 N.E.2d 541, 546 (Ohio 1997), *superseded by state constitutional amendment on other grounds in State v. Smith,* 684 N.E.2d 668 (Ohio 1997); *see also State v. Mardis,* 729 N.E.2d 1272, 1274 (Ohio Ct. App. 1999), *motion for delayed appeal denied,* 755 N.E.2d 354 (Ohio 2001).  The manifest weight of evidence standard is a broader test than the standard used to evaluate the sufficiency of evidence.  *State v. Martin,* 485 N.E.2d 717, 720 (Ohio Ct. App. 1983); *see also State v. Thompson,* 713 N.E.2d 456, 468 (Ohio Ct. App.), *appeal not allowed,* 700 N.E.2d 334 (Ohio 1998); *cf. Tibbs,* 457 U.S. at 41-45.  In essence, sufficiency, which implicates due process concerns, tests the adequacy of the evidence in proving the essential elements of the offense charged and presents a question of law, which may not be resolved by the reviewing court through weighing the evidence; in contrast, in determining whether reversal is warranted based on the weight of the evidence, the appellate court sits as a "thirteenth juror" to assess the jury's resolution of conflicting testimony upon review of the entire record, which includes weighing the evidence and all reasonable inferences and considering the credibility of witnesses.  *Thompkins,* 678 N.E.2d at 546-47; *see also Tibbs,* 457 U.S. at

41-42; *Martin,* 485 N.E.2d at 720-21.  As the Supreme Court explained in *Tibbs,* 457 U.S. at 43, unlike a reversal on the ground of insufficient evidence, a reversal based on the weight of the evidence "does not mean that acquittal was the only proper verdict." Rather, a reversal based on the weight of the evidence "can occur only after the State both has presented sufficient evidence to support conviction and has persuaded the jury to convict.  The reversal simply affords the defendant a second opportunity to seek a favorable judgment." *Id.* at 42-43.

Accordingly, this Court concludes petitioner's claim in ground three of the petition that his conviction for burglary was against the manifest weight of the evidence does not implicate constitutional concerns, but instead raises an issue of state law only that is not cognizable in this federal habeas corpus action.

Accordingly, petitioner is not entitled to habeas corpus relief with respect to his third ground for relief.

### VI.  Petitioner's sentencing claim based on state law is non-cognizable and petitioner's sentencing claim based on federal constitutional law has been waived due to a procedural default.

As his fourth ground for relief, petitioner asserts that his sentence was based on privileged communications he made during his drug treatment program in violation of state law.   He argues that the use of privileged communications violates his First Amendment right to free speech, his right to due process and his right to be free of cruel and unusual punishment under the Eighth Amendment.

A federal court may review a state prisoner's habeas corpus petition only on the ground that the challenged confinement violates the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a).  A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law."  *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *Smith v. Sowders,* 848 F.2d 735, 738 (6th Cir.), *cert. denied,* 488 U.S. 866 (1988).  To the extent that petitioner argues  that the trial court erred in sentencing him based on privileged communications in violation of state law, he fails to assert a constitutional deprivation.  Because petitioner's claim involves alleged errors under state law, it is not cognizable in a federal habeas corpus proceeding. *See  Sneed v. Donahue,* 993 F.2d 1239, 1244 (6th Cir. 1993).

Because petitioner failed to present in his direct appeal his claim that sentencing him based on privileged communications violated his constitutional rights, he has committed a procedural default waiving the claim unless he can demonstrate cause and prejudice or his actual innocence. In his traverse, petitioner argues that he presented this claim to the Ohio Court of Appeals in his application for reopening in which he listed this issue as one of the errors that his counsel neglected to present to the appellate court on direct appeal. (Doc. 9 at 7). Since an application for reopening is for the purpose of presenting claims of ineffective assistance of appellate counsel, this does not amount to a fair presentation to the state courts of his claim of constitutional error in sentencing. *See McMeans v. Brigano,* 228 F.3d 674, 684 (6th Cir. 2000), *cert. denied,* 532 U.S. 958 (2001).

In his application for reopening, petitioner argued that appellate counsel was ineffective for failing to raise the claim that the trial court's reliance on petitioner's privileged statements threatening the trial judge and prosecuting witness for sentencing purposes violated due process. Assuming, *arguendo,* that in the instant proceeding, petitioner had raised ineffective assistance of appellate counsel on this basis as cause for his default, this court would reject petitioner's justification because this court has determined that appellate counsel was not ineffective for failing to raise this claim. *See* Section III, *supra.* Moreover, in his application for reopening petitioner did not indicate that appellate counsel was ineffective for failing to raise a claim that the sentencing based on such threats also violated his *First* or *Eighth Amendment* rights. Accordingly, that ineffective assistance of appellate counsel claim itself would have been procedurally defaulted and therefore could not be considered as cause for petitioner's procedural default of failing to raise a sentencing claim based on First or Eighth Amendment deprivations in his state appeal of right. *See Edwards v. Carpenter,* 529 U.S. 446, 452 (2000).

Petitioner has not established that a miscarriage of justice will result from the failure of this Court to consider the sentencing claim because petitioner is innocent of the crimes of which he was convicted. *See* Section I, *supra.*

Accordingly, for purposes of federal habeas corpus review, petitioner has waived his claim of sentencing error asserted in petitioner's fourth ground for relief in the petition.

### IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc.

1) be DENIED with prejudice.

2.  A certificate of appealability should not issue with respect to the dismissal on procedural default grounds of the ineffective assistance of trial counsel claims based on counsel's failure to object to the court's reliance on allegedly privileged information disclosed by petitioner during his court ordered drug addiction treatment, counsel's failure to object to the sentencing procedures, and counsel's failure to object to the introduction of evidence, all asserted in the petition in ground one, and the sentencing claim alleged in the petition as ground four because "jurists of reason would not find it debatable whether this Court is correct in its procedural ruling" as required under the first prong of the two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), which is applicable to procedurally-barred claims.[2]  A certificate of appealability also should not issue with respect to petitioner's ineffective assistance of appellate counsel claims and remaining ineffective assistance of trial counsel claims,  alleged in ground one, and petitioner's claims alleged in grounds two and three because for the foregoing reasons, petitioner has failed to make a substantial showing of the denial of a constitutional right remediable in this federal habeas corpus proceeding.  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  Petitioner has not shown that reasonable jurists could debate whether these claims should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell,* 123 S.Ct. 1029, 1034, 1039-40 (2003) (quoting *Slack,* 529 U.S. at 483-84) (in turn quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)).

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore DENY petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date:  10/3/03                       s/Jack Sherman, Jr.
                                     Jack Sherman, Jr.
                                     United States Magistrate Judge

_____

[2]Because this Court finds petitioner has not met the first prong of the *Slack* standard, it need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether grounds one and four state valid constitutional claims.  *See Slack,* 529 U.S. at 484.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

---

Mathew Lehrfeld,
     Petitioner


     vs                           Case No. C-1-01-432
                                     (Dlott, J.; Sherman, M.J.)

Jeffrey Wolfe,
     Respondent


---

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Jack Sherman, Jr., United States Magistrate Judge, in the above-entitled action.  Pursuant to Fed. R. Civ. P. 72(b), any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof.   Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s).  Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections.  *See* Fed. R. Civ. P. 72(b).  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal.  *See Thomas v. Arn,* 474  U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

27