1  Lehrfeld?

2  A. I didn't know him until then.

3  Q. Pardon me?

4  A. I didn't know him until then.

5  Q. Okay. How did you come to meet Matthew
6  Lehrfeld?

7  A. I came home, me and my sister came to my
8  apartment.

9  Q. About what time?

10  A. It was about 9:30 a.m.

11  Q. Where were you before that?

12  A. At the bus stop waiting on my sister to
13  get off the bus.

14  Q. Okay.

15  A. And I came in, and he was in my bathroom.
16  We were sitting down in my room drinking beer, and he came
17  out of the bathroom with knives in his hands.

18  MR. CUTCHER: I'm sorry. I didn't hear
19  that part.

20  THE COURT: They were sitting, drinking
21  beer, and something -- what happened then, ma'am?

22  Q. Wait. Who was drinking beer?

23  A. My sister and myself.

24  Q. Inside the apartment?

25  A. Yes, sir.

1           MR. ADAMS: Judge, I'll be very brief.

2                     OPENING STATEMENT

3  BY MR. ADAMS:

4           I think the evidence will show here that

5  on January 18, 1999, somewhere between or around

6  the hours of 9:30 a.m. and 10:15 a.m., at 1650

7  Hamer Street, Apartment 24, which is located in

8  Over-The-Rhine, just around Vine Street, the Vine

9  Street area, that Matthew Lehrfeld, the defendant

10 here, did not have any permission to be in the

11 apartment of Mary Robinson. That the evidence

12 will show there was an open window that Mary

13 Robinson, the victim, indicated was closed, and to

14 her best guess, that's the only way he could have

15 gotten in.

16          Now, that open window is, if you look

17 outside of it, there's an open courtyard.

18 However, it's surrounded by apartment buildings.

19 So, somehow, I think the evidence will show that

20 he gained access to that courtyard in some form or

21 fashion, and entered up through her apartment by a

22 window where there's a fire escape located. Came

23 into the apartment, and once Mary Robinson got in

24 to her apartment, she entered through her front

25 door, and when she entered her apartment, the

1   MR. CUTCHER: And I think for brevity
2   sake, your Honor, it's my understanding that the
3   prosecutor is willing to stipulate the admission
4   of these records.
5   MR. ADAMS: Yes, your Honor.
6   THE COURT: What number are they?
7   MR. CUTCHER: Twelve.
8   THE WITNESS: Matt had asked me to chart
9   something on the bruising back in January. To be
10  honest with you, I got busy, and this is a late
11  entry as far as what I observed, but per his
12  request, I examined him soon after his admission
13  into the Justice Center, and he was noted to have
14  very large bruises on the back -- on his back of
15  each leg and lower back. Bruises were severe.
16  They were very severe.
17      Q.      And how about on the back of his head?
18  Could you describe that bruise?
19      A.      That was a large, probably about this
20  big, a big lump (indicating) probably about three and a
21  half to four inches in diameter, and quite raised.
22      Q.      And did you ask Matt how those injuries
23  occurred?
24      A.      He said that they were defensive injuries
25  from being --

1  the back of his head, and on the very back of his head,
2  where he showed me, because he wanted me to tell the
3  nurse, was a large bump approximately the size of a
4  softball, which stuck out probably about a quarter of an
5  inch, eighth of an inch, and had a slight laceration on
6  the back.
7         Q.    And did you have any further contact with
8  Mr. Lehrfeld?
9         A.    Yes, sir.  He stayed --
10              MR. ADAMS:  Objection.
11              THE COURT:  Sustained, with respect to he
12        stayed.
13              Go ahead.
14        A.    He stayed in the psych ward.  I'm not
15  sure of the length of time, but at that time was a
16  permanent psych officer, and he was one of the inmates in
17  there.
18              MR. CUTCHER:  Thank you.  Nothing
19        further.
20              MR. ADAMS:  No questions.
21              THE COURT:  Sir, you can step down.
22        Release him?  Any objection to his release?
23              MR. CUTCHER:  No.
24              MR. ADAMS:  No.
25              (Witness excused.)

```
 1   Exhibit Number 9?
 2           A.      Yes.
 3           Q.      And that's what's inside this bag that
 4   you see?
 5           A.      That's what I wrapped up, yes.
 6           Q.      Did she put it in a plastic bag, or did
 7   you?
 8           A.      She had it in a plastic bag.  In fact,
 9   this is the bag she had it in.
10           Q.      And you put the cardboard around it?
11           A.      Right.
12                   MR. ADAMS:  Thank you.  Nothing further.
13                   THE COURT:  Cross-examination?
14                        CROSS-EXAMINATION
15   BY MR. CUTCHER:
16           Q.      Good morning, Officer DuBois.
17                   THE COURT:  Good afternoon.
18                   MR. CUTCHER:  I'm sorry, your Honor.
19   Truly I am.
20           Q.      Officer, I'd like you to look at
21   Defendant's Exhibit 13.  Did you prepare that report?
22           A.      Yes, I did.
23           Q.      'Okay.  And when it says on your report
24   that the defendant found at the scene with weapons still
25   on his person, is that accurate?
```

1   A.   I don't remember a weapon on him at the
2   time. I didn't see a weapon.
3   Q.   That's your handwriting, isn't it?
4   A.   That is my handwriting.
5   Q.   Did you get that information from Mary
6   Robinson that he had a weapon on him?
7   A.   That information came from the sergeant.
8   I didn't talk to her at all. It came from the sergeant.
9   Q.   It's your understanding the sergeant
10  talked to her?
11  A.   And relayed the information to me.
12  Q.   Did you see the defendant up the
13  stairwell?
14  A.   I saw him when we first got there. I saw
15  Sergeant Wells, and I saw her go into the apartment.
16  Q.   And you didn't see a weapon in his hand?
17  A.   He had a knife in his hand.
18  Q.   Saw a knife in his hand?
19  A.   Right.
20  Q.   And that wasn't recovered?
21  A.   Not at the time, we couldn't find it.
22  Q.   And did you understand what had happened?
23  Did you talk to Mary Robinson at all?
24  A.   The only thing she told me, gentleman up
25  there has a knife in his hand. The sergeant said he was,

1    going to get him.
2        Q.    You weren't told that he had been beaten
3    up and stun gunned?
4        A.    I had no knowledge of that at all.
5        MR. CUTCHER:  Okay.  Thank you.  Nothing
6    further.
7                    REDIRECT EXAMINATION
8    BY MR. ADAMS:
9        Q.    Officer, I want to get this clear.  You
10   actually saw a knife in the defendant's hand?
11       A.    The defendant ran back into the apartment
12   with a knife; and the sergeant said he had a knife.  He
13   went back in the apartment.  The sergeant was standing on
14   that staircase, and all I could see was something shiny,
15   and it appeared to me as a knife.
16       Q.    Okay.  And after you cleared him out,
17   there was no officer that searched or found a knife at the
18   time?
19       A.    We cleared him out, took him downstairs,
20   and another officer was there that stayed with him.  We
21   went back to the apartment, had the pictures taken, but we
22   didn't recover the knife.  We didn't find it.  I didn't
23   see it.  There was knives there, but not the particular
24   knife that she told us he had.
25       MR. ADAMS:  Okay.  Thank you.

THE STATE OF OHIO, HAMILTON COUNTY
COURT OF COMMON PLEAS

date: 09/28/99
code: GJRC
judge: 33

Entered Date: 9-28-99
Image: 294

Judge: RICHARD A NIEHAUS

NO: B 9900433

STATE OF OHIO
VS.
MATTHEW LEHRFELD

JUDGMENT ENTRY REVOKING
COMMUNITY CONTROL AND
IMPOSING SENTENCE

Defendant was present in open Court with Counsel PERRY L ANCONA on the **28th day** of September 1999 for a hearing on a charge of violation of the conditions of defendant's community control. Defendant was informed of the grounds upon which revocation of community control was proposed.

The Court afforded the defendant and counsel an opportunity to be heard and to submit evidence on defendant's behalf, together with such facts and circumstances as tend to contradict or to explain the violation of the conditions of defendant's community control.

Upon consideration of the evidence produced at the hearing, the Court finds that the defendant violated the conditions of community control.

THEREFORE, the Court revokes the community control heretofore granted to Defendant, and orders that sentence be executed forthwith; to-wit, Defendant is sentenced to be imprisoned for a period of:

CHARGE:
count 1: BURGLARY, 2911-12/ORCN,F2, CONFINEMENT: 6 Yrs, Credit 254 Days
DEPARTMENT OF CORRECTIONS
DEFENDANT TO PAY COURT COSTS.
count 2: AGG BURGLARY, 2911-11A1/ORCN, JUDGMENT ENTRY OF ACQUITTAL

Parent Case Id:8397816

Page 1



EXHIBIT G

## COURT OF COMMON PLEAS

STATE OF OHIO                HAMILTON COUNTY, OHIO

-VS-                         NO: B-9900433   Judge NIEHAUS  09/10/99

MATTHEW LEHRFELD             **COMMUNITY CONTROL SANCTION VIOLATION**

Now comes Michael C. Snowden, Chief Probation Officer of Hamilton County, Ohio, and states that MATTHEW LEHRFELD heretofore convicted of BURGLARY, COUNT 1 (F-2), on 5/13/99 and placed on Community Control Intensive Supervision on 6/15/99 for a period of three (3) years, has violated the conditions of his Community Control as follows:

RULE #11:   I UNDERSTAND THE SPECIAL CONDITIONS ORDERED BY THE COURT WILL BE ENFORCED BY THE PROBATION DEPARTMENT. THESE CONDITIONS ARE: <u>MUST ENTER AND SUCCESSFULLY COMPLETE THE RIVER CITY CORRECTION CENTER AND AFTER</u>.

On 9/2/99, Probationer Lehrfeld was unsuccessfully terminated from River City Correctional Center.

N.B.   The probationer is currently in the custody of the Hamilton County Sheriff's Department. A Probable Cause/Probation Violation hearing has been set before the Honorable Richard A. Niehaus on 9/22/99 at 9:30 a.m., in Room 595.

Copies to:

    Prosecutor
    Probationer
    File
    Assignment Commissioner

Attest:     Coolidge Tisdale
            Probation Officer
                                                Michael C. Snowden
                                                Chief Probation Officer

FILED
Sep 15  12 20 PM '99
JAMES CISSELL
CLERK OF COURTS
HAMILTON COUNTY, OH


EXHIBIT 9

1   THE COURT: I am going to file a grievance
2  against him.
3   You are on record now, sworn testimony
4  that the attorney made comments about the Judge.
5   THE WITNESS: Well, the attorney also told
6  me that you kept stating how bizarre my case was
7  from the beginning, and he told me --
8   THE COURT: They told me a bizarre story.
9  The whole thing is an amazing story for those who
10 don't smoke crack. It was really an interesting
11 story, I still don't know what happened in there.
12   You know what the elements of burglary
13 are? You were in their house, they don't want you
14 in the house, you go after them with a knife.
15 Burglary.
16   THE WITNESS: Well, I was already in the
17 house.
18   THE COURT: I know. And then they wanted
19 you out of the house and they said you wouldn't
20 leave and you pulled a knife. That is burglary.
21   THE WITNESS: There was five guys waiting
22 for me outside the door and those are the guys that
23 jumped me when they ran into her apartment. I am
24 the one that got beat up.
25   MR. DAVIS: Objection.

Exhibit F

1   in a lot of trouble, could have been killed,
2   couldn't you?
3           THE DEFENDANT:  Yeah.
4           THE COURT:  We know what it's all about,
5   it's about some little stolen crack while we are in
6   there.
7           THE DEFENDANT:  No, I didn't steal any of
8   it.
9           THE COURT:  You took the merchandise, you
10  wouldn't pay, that's why they took your keys.  I
11  told you what burglary is, to be in their house
12  when they don't want you in there and you assault
13  them.  It's burglary.  Whether all the other stuff
14  was true or not you shouldn't have been there.
15          Are you going to be angry about this?
16          THE DEFENDANT:  No, I am not.
17          THE COURT:  I will see you in another
18  couple of weeks.  Guess what, I will lose my
19  patience and I won't see you for a long, long time.
20          THE DEFENDANT:  No, you won't see me
21  again.
22          THE CONSTABLE:  October 4, at 9:30.
23          THE COURT:  I have sentenced him, I just
24  want to see the report.  I don't want him out of
25  treatment.



```
 1            MR. ADAMS:  Okay.  May the record reflect
 2   identification of the defendant?
 3            THE COURT:  So reflect.
 4            MR. ADAMS:  Thank you.
 5       Q.   Did you let Matthew Lehrfeld inside?
 6       A.   No, I did not.
 7       Q.   Did your friend or sister let him inside?
 8       A.   No, she did not.
 9            THE COURT:  How many people were in the
10   apartment?
11            THE WITNESS:  Two.
12       Q.   What's --
13            THE COURT:  There's two people in your
14   apartment, not three.  You and your sister.
15   There's nobody else?
16            THE WITNESS:  Yes.  No, not at that time.
17            THE COURT:  He said, "your friend."
18            MR. ADAMS:  I'm sorry.
19       Q.   What's your sister's name?
20       A.   Denise Rogers.
21       Q.   All right.  So let's get back to where he
22   came out of the bathroom with the knife and you went for
23   the phone.  Go over that again, please.
24       A.   When I went for the telephone, he grabbed
25   the phone cord and snatched it out of the wall, so we both
```